IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WIRELESS BUYBACKS, LLC : | |
| : | |
| v. : | Civil No. CCB-16-0328 |
| : | |
| HANOVER AMERICAN INS. CO. : | |

## MEMORANDUM

Now pending are several motions that arose in the context of a dispute between Wireless Buybacks, LLC ("Wireless") and Hanover American Insurance Company ("Hanover") over whether Hanover has a duty to defend Wireless in an underlying lawsuit. The parties have filed cross motions for partial summary judgment. Hanover also has filed a motion to stay summary judgment briefing, and Wireless has filed a request for judicial notice. No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the court will grant Hanover's motion for partial summary judgment and deny Wireless's motion for partial summary judgment. The court will deny Wireless's request for judicial notice and will deny as moot Hanover's motion to stay summary judgment briefing.

## BACKGROUND

On February 23, 2013, Sprint Nextel Corporation and Sprint Communications Company, L.P. ("Sprint") filed a lawsuit against Wireless and other defendants. (Sprint Compl. Ex. 2, ECF No. 1-2). That lawsuit, *Sprint Nextel Corp., et al. v. Simple Cell, Inc., et al.* ("*Sprint* suit"),[1]

---

[1] United States District Court, District of Maryland, Case No. 1:13-cv-0617-CCB.

1

alleges that Wireless and other defendants engaged in unlawful business practices involving, *inter alia*, the unauthorized acquisition and resale of Sprint phones. (*Id.* ¶ 2). In essence, Sprint alleges that Wireless unlawfully acquired Sprint phones, "unlocked" them so they could function on non-Sprint wireless networks, and resold the phones overseas. (*Id.* ¶¶ 1–11). The *Sprint* suit includes 16 counts; according to Wireless, the most pertinent for present purposes are unfair competition; tortious interference with business relationships and prospective advantage; common law fraud; fraudulent misrepresentation; trafficking in computer passwords, 18 U.S.C. § 1030(a)(6); unauthorized access, 18 U.S.C. § 1030(a)(5)(C); unauthorized access with intent to defraud, 18 U.S.C. § 1030(a)(4); federal common law trademark infringement and false advertising under the Lanham Act; and conversion. (Wireless Compl. ¶ 17).

On February 4, 2016, Wireless filed a complaint for declaratory relief against Hanover, its general liability insurer, based on Hanover's failure to acknowledge a duty to defend Wireless and three individuals in the *Sprint* suit. (Wireless Compl. ¶ 21). At issue is undisputed policy language providing that Hanover had a duty to defend Wireless against any lawsuit seeking damages due to "personal and advertising injury." (*Id.* Ex. 1, 66, ECF No. 1-1). "Personal and advertising injury" includes "injury arising out of" "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (*Id.* Ex. 1, 82). The relevant policies also include a variety of exclusions from the coverage. (*See* Hanover Mot. Partial Summ. J. 20–28).

Hanover filed its Answer on March 23, 2016. In that filing, it also counterclaimed for declaratory judgment and other relief against Wireless Buybacks LLC, Wireless Buybacks Holdings, LLC, three individuals, and Sprint, seeking a declaration that it has no duty to defend

or indemnify in connection with the *Sprint* suit. (Hanover Answer & Countercl. 11–27, ECF No. 13). Wireless moved to dismiss Hanover's counterclaims against Sprint only on April 5, 2016. (Wireless Mot. Dismiss, ECF No. 19). Hanover responded, (Resp. in Opp'n Mot. Dismiss Countercl. & Reply, Mot. to Stay Summ. J. Br., ECF No. 20), and Wireless replied, (Reply, Mot. to Dismiss Countercl., ECF No. 31). Hanover then agreed to voluntarily dismiss its counterclaims against Sprint on the condition that Sprint agree to be bound by the court's entry of declaratory judgment regarding the existence of insurance coverage in the *Sprint* suit, including the duty to defend and/or indemnify. (Notice of Dismissal 1–2, ECF No. 33). The court approved that dismissal. (Order, Docket Entry No. 34). The non-Sprint counter-defendants answered Hanover's counterclaims on May 6, 2016. (Wireless Answer, ECF No. 32).

Meanwhile, on March 22, 2016, Wireless moved for partial summary judgment on its claim that Hanover owed Wireless a duty to defend in the *Sprint* suit. (Wireless Mot. Partial Summ. J., ECF No. 12). Hanover moved to stay summary judgment briefing. (Mot. Stay Summ. J. Br., ECF No. 16). Wireless responded, (Resp. in Opp'n Mot. Stay Summ. J. Br., ECF No. 18), and Hanover replied, (Resp. in Opp'n Mot. Dismiss Countercl. & Reply, Mot. to Stay Summ. J. Br.). But before the court issued a ruling on Hanover's motion to stay summary judgment briefing, Hanover filed its own motion for partial summary judgment, which also served as its response to Wireless's motion for partial summary judgment. (Hanover Mot. Partial Summ. J., ECF No. 36). Wireless then responded, (Wireless Resp. in Opp'n Mot. Partial Summ. J., ECF No. 39), and Hanover replied, (Hanover Reply, Mot. Partial Summ. J., ECF No. 43).

Wireless then filed a motion requesting judicial notice of various documents in support of its motion for partial summary judgment and in opposition to Hanover's motion for partial

summary judgment. (Request Judicial Notice, ECF No. 40). Hanover responded, (Resp. in Opp'n Request Judicial Notice, ECF No. 44), and Wireless replied, (Reply, Request Judicial Notice, ECF No. 45).

## LEGAL STANDARD

Wireless brought this action seeking declaratory judgment pursuant to 28 U.S.C. § 2201. (Wireless Compl. ¶ 3). The court has jurisdiction over this action under 28 U.S.C. § 1332, and the parties agree that Maryland law applies. (*Id.*; Hanover Answer & Countercl. 2).

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting

*Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

A. *Cross Motions for Partial Summary Judgment*

      The cross motions for partial summary judgment raise two issues. The first is whether the underlying complaint in the *Sprint* suit may trigger a duty to defend even though the tort of product disparagement is not specifically identified as a cause of action. If so, then the second question is whether the allegations in the underlying complaint here trigger the duty to defend.

I.

      In Maryland, an insurance company has a duty to defend its insured "for all claims that are potentially covered under the policy." *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 15 (2004). "If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend." *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407 (1975). "Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy." *Id.* at 408. "[A]ny doubt as to whether there is a potentiality of coverage under an insurance policy is to be resolved in favor of the insured." *Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 145 (1995).

      When determining if a duty to defend exists, the court follows a two-part inquiry. First, it examines the coverage and defenses under the terms and requirements of the insurance policy. Second, it asks whether the allegations in the underlying suit "potentially bring the . . . claim within the policy's coverage." *St. Paul Fire & Mar. Ins. Co. v. Pryseski*, 292 Md. 187, 193 (1981). Here, the issue is whether the allegations in the *Sprint* suit potentially fall within the

scope and limitations of coverage for "personal and advertising injury." *See Walk*, 382 Md. at 13.

As an initial matter, Hanover appears to suggest that no duty to defend exists because the underlying complaint does not include the tort of product disparagement as a cause of action. According to Hanover, the insurance policies here "cover the tort of disparagement, not 'claims which merely make reference to allegedly libelous or disparaging statement [sic] as factual background.'" (Hanover Mot. Partial Summ. J. 8) (quoting *American and Foreign Ins. Co. v. Church Schools in Diocese of Virginia*, 645 F. Supp. 628, 633–34 (E.D. Va. 1986)). Wireless, by contrast, claims the underlying lawsuit need not allege the tort of disparagement in order for a duty to defend to exist because "it does not matter what the labeled causes of action are." (Wireless Mot. Partial Summ. J. Mem. Law 17, ECF No. 12-1). According to Wireless, the duty to defend is triggered by the substance of the underlying claims, not their labels. (*Id.* 31) ("[T]he facts rather than the labels of causes of action determine the duty to defend.").

In Maryland, whether a duty to defend exists depends on both the alleged facts and the causes of action contained in the underlying complaint; the inquiry focuses on substance, not labels. Here, the relevant inquiry is whether the underlying lawsuit alleges or implies that Sprint suffered an injury that arose out of the publication of disparaging material – regardless of how Sprint labeled its counts. *See Walk*, 382 Md. at 8, 18; *see also Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 641 (1996) (duty to defend exists if underlying complaint "alleges action" that is potentially covered); *All Class Const., LLC v. Mut. Ben. Ins. Co.*, 3 F. Supp. 3d 409, 420 (D. Md. 2014) (courts must look beyond headings for the counts alleged in the underlying suit to determine whether a duty to defend exists). The absence of a count alleging product disparagement does not end the inquiry. The court will thus proceed with its examination of the

insurance policy and the substance of the underlying claims to determine whether those claims allege that Wireless published material that disparaged Sprint's "goods, products or services."

II.

Turning to the language of the insurance contract, Wireless and Hanover disagree on how to interpret the verb "disparage." According to Hanover, this policy term must be interpreted in accordance with Maryland tort law definitions of product disparagement to mean "the publication of matter derogatory to the plaintiff's . . . business in general" that is "of a kind calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage." (Hanover Mot. Partial Summ. J. 9) (quoting *Beane v. McMullen*, 265 Md. 585, 607–08 (1972); *see also* Black's Law Dictionary (10th ed. 2014) (Disparagement, in the tort context, refers to "[a] false and injurious statement that discredits or detracts from the reputation of another's character, property, product, or business.")). Wireless, by contrast, stresses that the policy term "disparagement" is not synonymous with common law commercial disparagement. (Wireless Mot. Partial Summ. J. Mem. Law 28). It suggests that "disparagement" should be interpreted "from a layman's perspective" to mean "to depreciate by indirect means." (Wireless Resp. in Opp'n Mot. Partial Summ. J. 29–30). The court will assume without deciding that the underlying complaint need not allege the elements of the tort of disparagement, as interpreted in Maryland, in order to trigger coverage. *See Warfield-Dorsey Co. v. Travelers Cas. & Sur. Co. of Illinois*, 66 F. Supp. 2d 681, 690 (D. Md. 1999) (concluding a duty to defend existed based on a disparagement theory without referring to tort law definitions of "disparagement"). Even when adopting the "layman's perspective" advanced by Wireless, the underlying complaint still fails to allege that Wireless disparaged Sprint.

As Wireless acknowledges, the underlying complaint does not allege that Wireless committed the tort of product disparagement. It also does not expressly allege that Wireless "disparaged" Sprint in a more colloquial sense – let alone that it "published" disparaging material. (*See* Wireless Mot. Partial Summ. J. Mem. Law 12) ("[T]he allegations do not expressly reference specific oral or written communication by Wireless Buybacks."). Wireless nonetheless contends that publication of disparaging communications can be reasonably inferred from the substance of the complaint, (*id.* 11–12), and advances various explanations for why that is so. None of these theories is persuasive, as will be explained below.

The first theory centers on the notion of false equivalence. According to Wireless, the underlying complaint alleges that Wireless falsely portrayed its phones as equivalent to those sold by Sprint. (*See* Wireless Mot. Partial Summ. J. Mem. Law 35). Of course, the physical phones sold by Wireless and Sprint are essentially identical; Wireless sold "a genuine Sprint phone . . . with equivalent performance." (Wireless Resp. in Opp'n Mot. Partial Summ. J. 34). According to Wireless, however, Sprint alleged the Wireless phones were nonetheless inferior because they "did not have Sprint's backing and utilization rights" – even though they bore the Sprint trademark. (*Id.*). For instance, Wireless consumers believed they were obtaining warrantied Sprint phones when in fact they were not, and this confusion allegedly harmed Sprint's reputation. (Wireless Mot. Partial Summ. J. Mem. Law 35–36, 38). These false claims of equivalence constitute disparagement, Wireless contends, "because the comparison to the insured's allegedly inferior product denigrates the competitor's product." (*See id.* 40–41).

Some courts have found disparagement based on false equivalence where the insured allegedly made false or misleading statements claiming its products were equivalent to those of a

8

competitor – even if the competitor is not identified by name. *See JAR Labs. LLC v. Great Am. E & S Ins. Co.*, 945 F. Supp. 2d 937, 943–45 (N.D. Ill. 2013); *see also McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) ("A misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer."). But these cases tend to involve allegations that the insured explicitly compared its product to that of a competitor. *See, e.g.*, *JAR Labs.*, 945 F. Supp. 2d at 943–45. Where such an explicit comparison is missing, courts are more reticent to find disparagement. *See Skylink Techs., Inc. v. Assurance Co. of Am.*, 400 F.3d 982, 985 (7th Cir. 2005) (no disparagement where the insured made a false statement misrepresenting the characteristics of its product that "was not really a comparison" to a competitor's product).

Here, the false equivalence framework is a poor fit, because Wireless is not making a false comparison between the phones it sells and the phones sold by Sprint. Indeed, Wireless is selling phones that contain the Sprint trademark, and its alleged scheme "is predicated on the unauthorized exploitation of . . . the Sprint trademark and goodwill." (Sprint Compl. ¶ 6). It thus seems odd to suggest that Wireless is, simultaneously, disparaging Sprint or its products. The case here more closely resembles those where the underlying complaint alleges that the insured misled consumers into thinking it was selling the (superior) product of a competitor when it fact it was selling its own (inferior) product. Such claims may constitute an intellectual property rights violation or false advertising, but such claims generally do not – without more – allege disparagement because they do not allege a false comparison. *See, e.g.*, *Superperformance Int'l Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 221–23 (4th Cir. 2003) (no disparagement where complaint alleged trademark infringement and false advertising and insured allegedly passed off

its own replicas as genuine articles); *Bullpen Distribution, Inc. v. Sentinel Ins. Co.*, 584 F. App'x 769, 771 (9th Cir. 2014)[2] (no implied disparagement where insured claimed achievements and capacity of the underlying plaintiff as its own because insured's claims do not necessarily imply the underlying plaintiff did not have those same achievements and capacity); *see also Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 326 P.3d 253, 265 (2014) ("A party's attempt to copy or infringe on the intellectual property of another's product does not, without more, constitute disparagement."); *Elite Brands, Inc. v. Pennsylvania Gen. Ins. Co.*, 164 F. App'x 60, 62 (2d Cir. 2006) (no disparagement where patent infringement alleged because the underlying complaint contained no "specific assertions of unfavorable facts reflecting upon the rival product").

The cases cited by Wireless are unconvincing. *Jar Labs.*, for instance, involved false statements that expressly compared the insured's products to those of a competitor – precisely what is missing here. In *Miranda v. California Capital Ins. Co.*, disparagement existed where an insured falsely represented that its inferior product was, in fact, a superior product from a competitor, and this misrepresentation was intended to tarnish the competitor's reputation. 2011 WL 1168064 (Ct. App. March 29, 2011). Here, by contrast, the complaint suggests that Wireless benefited from the good reputation of Sprint, (*see* Sprint Compl. ¶ 6), and did not act with the express purpose of tarnishing Sprint's reputation. In *Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, the court found disparagement where the insured falsely advertised that it was selling its competitor's (superior) goods when in fact it only sold "cheap synthetic knock-offs" in its store. 761 F. Supp. 2d 904, 907 (N.D. Cal. 2011). The *Michael Taylor* opinion preceded the somewhat narrower interpretation of disparagement stated by the California Supreme Court in *Swift Distribution*. *See* 326 P.3d at 261. In any event, the complaint here does

---

[2] Unpublished opinions are not binding precedent and are cited only for their reasoning.

not allege similar "bait-and-switch" tactics – the phones sold by Wireless, for instance, are not "cheap synthetic knock-offs."

In a slight variation, Wireless also suggests the underlying complaint alleges the publication of disparaging material because Wireless phones are cheaper than those sold by Sprint. Because the Wireless phones are cheaper, Sprint customers will conclude – in light of the misrepresentation by Wireless that it provides an equivalent product – that Sprint is a "price gouger," Wireless claims. (Wireless Mot. Partial Summ. J. Mem. Law 35–38). This is not enough to establish that the underlying complaint alleges the publication of disparaging material. Indeed, this argument would lead to absurd results: disparagement is not alleged every time businesses engage in price competition. *See Swift Distribution*, 326 P.3d at 264 ("Reducing the price of goods, without more, cannot constitute a disparagement").

Finally, Wireless contends the underlying complaint alleges disparagement because 1) the alleged Wireless scheme harmed Sprint's reputation, and 2) Wireless made statements in order to advance that scheme. (*See* Wireless Mot. Partial Summ. J. Mem. Law 32, 38–40). Here, Wireless appears to conflate reputational harm and disparagement by assuming that reputational harm is its own form of disparagement. But harm to reputation alone does not establish disparagement – even if that harm is caused partly by oral or written communications. *See All Class Const*, 3 F. Supp. 3d at 420–21 (no disparagement even though reputational harm was alleged). Many claims allege reputational harm yet, without more, do not amount to disparagement – including alleged intellectual property rights violations. *See Swift Distribution*, 326 P.3d at 265. Although it is true that Wireless allegedly made statements to advance its scheme, (*see* Sprint Compl. ¶ 116), the complaint does not suggest Wireless made disparaging

statements. Even less convincing is Wireless's suggestion that the *Sprint* suit alleges disparagement because the underlying complaint "implies that statements not articulated in the complaint must have been made that were injurious to Sprint's reputation." (*See* Wireless Mot. Partial Summ. J. Mem. Law 26). Speculation about what the defendant in the underlying suit might have done in light of the alleged facts does not establish a duty to defend. *See Walk*, 382 Md. at 24; *see also Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 991 F. Supp. 1024, 1039–40 (N.D. Ill. 1998) (courts may not assume disparaging comments were made where an insured allegedly harmed a competitor by promoting its own product to the competitor's customers).

In sum, the underlying complaint here alleges that Wireless caused Sprint reputational harm, but it does not allege disparagement. Wireless has failed to show that the complaint alleges the "[o]ral or written publication . . . of material that . . . disparages a person's or organization's goods, products or services." And because Hanover has no duty to defend based on a disparagement theory, this court need not examine the exclusions that might bar coverage even if the underlying complaint had alleged "personal and advertising injury."[3]

*Defamation*

In addition to disparagement, "personal and advertising injury" in the contract here also includes "injury arising out of" "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization." Wireless thus contends that a duty to defend also exists because the complaint alleges "implicit defamation." (*See* Wireless Mot. Partial Summ. J. Mem. Law 42–44). To make its case, Wireless largely reiterates its arguments advanced under its

---

[3] Wireless also suggests that even if the underlying complaint does not allege disparagement, extrinsic evidence establishes disparagement. (*See* Wireless Resp. in Opp'n Mot. Partial Summ. J. 39–40). However, extrinsic evidence is only relevant if an examination of the complaint – in conjunction with the insurance policy – "neither conclusively establishes nor negates a potentiality of coverage." *Walk*, 382 Md. at 16 (quoting *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 108 (1995)). Here, the substance of the complaint clearly establishes that there is no potentiality of coverage. Thus, extrinsic evidence is not relevant, and this court need not examine the issue. In any event, the extrinsic evidence offered here would not change the court's conclusion.

disparagement theory. For the same reasons, this argument has no merit: the underlying complaint does not allege that Wireless published material that defames Sprint.

B. *Request for Judicial Notice*

Separately, Wireless requests that the court take judicial notice of two articles and two petitions for panel rehearing as well as a separate insurance policy form. (Request Judicial Notice 1–2). This request will be denied.

A federal court may notice adjudicative facts – the facts of a particular case, *see* Fed. R. Evid. 201(a) advisory committee's note – "if a party requests it and the court is supplied with the necessary information," Fed. R. Evid. 201(c)(2). That said, an adjudicative fact may only be noticed if it is indisputable, *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 n.* (4th Cir. 2004), meaning it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b). To be noticed, an adjudicative fact must also be relevant. *See United States v. LaRouche*, 4 F.3d 987, *4 (4th Cir. 1993) (unpublished opinion).

Here, the two articles and two petitions for rehearing contain legal arguments, not adjudicative facts, and thus the court declines to notice them. The separate policy form is not relevant to the present dispute; thus, the court declines to notice it as well.

C. *Motion to Stay Summary Judgment Briefing*

After Wireless filed a motion for partial summary judgment, Hanover moved to stay summary judgment briefing. (Mot. Stay Summ. J. Br.). However, both parties subsequently agreed to proceed with summary judgment briefing, and Hanover filed its own motion for partial

summary judgment. (Hanover Mot. Partial Summ. J.). This court will thus deny the motion to stay summary judgment briefing as moot. (*See Wireless Correspondence*, ECF No. 35).

## CONCLUSION

For the aforementioned reasons, the court will grant Hanover's motion for partial summary judgment on the duty to defend issue and will deny Wireless's motion for partial summary judgment on that same issue. The court also will deny Wireless's request for judicial notice. Hanover's motion to stay summary judgment briefing will be denied as moot.

A separate order follows.

12/8/2016  
Date

/S/  
Catherine C. Blake  
United States District Judge